COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judge Elder and Senior Judge Bumgardner
Argued by teleconference


LOLITA RENEE HOWARD

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1875-10-4                      JUDGE LARRY G. ELDER
                                                         MAY 24, 2011

COST PLUS WORLD MARKET AND
  FEDERAL INSURANCE COMPANY


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          W. David Falcon, Jr. (Jin Kim; Chasen Boscolo, on briefs), for
          appellant.

          Douglas A. Seymour (Siciliano, Ellis, Dyer & Boccarosse, PLC, on
          brief), for appellees.


        Lolita Renee Howard (claimant) appeals from a decision of the Workers' Compensation

Commission (commission) denying her claim for permanent disability benefits as a result of a

right thumb injury sustained during the course of her employment with Cost Plus World Market

(employer).  Claimant argues the commission erred in 1) determining that she waived or

abandoned her claim for permanent partial disability, and 2) reversing an award of permanent

partial disability on the ground that the statute of limitations barred her permanency claim.

Because the parties' joint stipulation did not supersede the commission's decision to stay the

timely filed permanency claim, we reverse the commission's denial of permanent partial

disability and remand the case for further proceedings consistent with this opinion.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On January 18, 2006, claimant injured her right thumb while assisting a customer with a case of champagne in one of the stores operated by employer. On February 8, 2006, claimant filed a claim for benefits with the commission requesting temporary total disability, lifetime medical benefits, and "compensation for permanent disability." On February 14, 2006, the commission ordered employer to respond to claimant's claim "for temporary total wage loss beginning [January 18, 2006,] and continuing, as well as lifetime medical benefits." The notice further stated that claimant's "claim for permanent disability will remain on hold pending receipt of a final impairment rating."

An evidentiary hearing was scheduled for May 5, 2006, to hear claimant's claim for benefits. However, on May 4, 2006, a letter from counsel for employer requested the commission to "remove [the] matter from the . . . hearing docket" because "[t]he parties have resolved all issues presently in dispute." In response, the commission removed the matter from the docket "contingent upon the executed stipulated agreement."

The parties submitted a joint stipulation that confirmed claimant was entitled to the payment of temporary total disability benefits from January 18 through March 3, 2006, and temporary partial disability benefits from March 4 through April 4, 2006. The joint stipulation further gave claimant lifetime causally related medical benefits. The joint stipulation was silent as to claimant's claim for permanent disability benefits.

Following her injury and initial urgent treatment, claimant treated with Dr. H. Matthew Quitkin on multiple occasions in 2006 and 2007. Dr. Quitkin noted he had difficulty in delineating claimant's pathology because of the degree of sensitivity she exhibited and planned to treat her with a thumb splint and medication. Subsequent tests on May 30, 2007, yielded a

clinical impression of upper limits of normal versus early carpal tunnel syndrome.  On September 18, 2007, Dr. Quitkin noted that claimant experienced pain over the dorsal aspect of her right thumb and right hand while writing.  The record does not contain any further examinations or treatments with Dr. Quitkin.

On March 25, 2009, Dr. Jeffery Phillips evaluated claimant's work injury and reviewed her medical records.  Dr. Phillips concluded that claimant "has reached maximum medical improvement" and sustained "a permanent injury to the right hand" caused by her January 18, 2006 work accident.  Dr. Phillips gave claimant a 41% impairment rating.

On April 9, 2009, claimant filed Dr. Phillips' medical evaluation and impairment rating along with a request that the claim for permanent partial disability benefits be placed on the docket.  The commission issued an order to employer to respond to "the pending claim seeking 41% permanent partial disability to the right hand."  Employer defended on the grounds that the claim was barred by the statute of limitations.

The deputy commissioner held that the 36-month statute of limitations period under Code § 65.2-708(A) did not apply to claimant's permanency claim because the joint stipulation did not contain an express waiver of "her right to pursue any permanency."  The deputy commissioner further held that Dr. Phillips assessed claimant's impairment approximately nine days before the statute of limitations expired, rendering the change-in-condition claim timely filed.  The commission reversed, holding that "by executing the Joint Stipulation, which determined only the claimant's entitlement to wage loss and medical benefits, her claim for permanent partial disability benefits was waived or abandoned at that time, and she was required to file a change-in-condition claim with 36 months of the date compensation benefits were last paid."

II.

ANALYSIS

Code § 65.2-708 provides for the review of any award on the ground of a change in condition. For such claims alleging permanent disability, "[n]o review . . . made after . . . thirty-six months from the last day for which compensation was paid shall be allowed for the filing of claims payable under § 65.2-503." Code § 65.2-708(A)(i).

Claimant argues the statute of limitations provision of Code § 65.2-708(A) does not bar her claim for permanent disability benefits because she filed the permanency claim on February 8, 2006, and the claim remained open pending a future determination of a final impairment rating. She contends the joint stipulation did not explicitly address this claim and that the permanency claim was never dismissed.

Upon receipt of claimant's claim for various benefits, the commission issued an order requiring employer to respond to the claims for temporary total wage loss and lifetime medical benefits. The order separately stated that "the claim for permanent partial disability will remain *on hold* pending receipt of a final impairment rating." (Emphasis added). The portion of the order pertaining to claimant's permanency claim did not operate as a dismissal of that claim. Thus, claimant's permanency claim remained open until she obtained a final impairment rating. See Cnty. of Spotsylvania v. Hart, 218 Va. 565, 568, 238 S.E.2d 813, 815 (1977) (holding permanent disability benefits are "not awardable 'until the injury has reached a state of permanency, i.e. maximum improvement, when the degree of loss may be *medically ascertained*'" (quoting Collins v. G.M. Clements Co., 48 O.I.C. 49 (1966)) (emphasis added)).

However, employer argues, and the commission held, that the joint stipulation had a preclusive effect on claimant's permanency claim such that if claimant wanted to renew the permanency claim, she would have to file a new change-in-condition claim requesting permanent

- 4 -

partial disability benefits. We disagree; a plain reading of the joint stipulation reveals no intent to abandon the permanency claim.

"The commission cannot hold that a claimant has withdrawn a 'claim' absent a *clear showing* that the claim has been withdrawn." Keenan v. Westinghouse Elevator Co., 10 Va. App. 232, 235, 391 S.E.2d 342, 344 (1990) (emphasis added). "The commission's rules do not specify that the mere act of removing a case from the hearing docket constitutes a dismissal of the claim or an act that converts an otherwise interlocutory procedural issue into a final decision." Brown v. United Airlines, Inc., 34 Va. App. 273, 279, 540 S.E.2d 521, 524 (2001).

The joint stipulation only encompasses claimant's claims for wage loss and lifetime medical benefits. It is silent as to her claim for permanent partial disability. The parties did not include a provision indicating an intent to resolve any other ongoing claims. And, in response to the joint stipulation, the commission merely "ordered that this matter be removed from the hearing docket" and that the show cause order against employer "is quashed." This order did not dismiss claimant's remaining permanency claim. See Keenan, 10 Va. App. at 235, 391 S.E.2d at 344 (holding that an order removing a case from the hearing docket is not *ipso facto* a dismissal of the claim). In accordance with the commission's earlier order, employer was required to respond only to the wage loss and lifetime medical benefits claims, not to the permanency claim. It does not follow that the parties would seek to adjudicate that claim before claimant obtained her final impairment rating.[1] Thus, it is clear that the parties and the commission intended the

---

[1] The permanency claim could not have been before the commission at the May 5, 2006 hearing because claimant had not yet filed her final impairment rating at that time. Although the permanency claim was ongoing and in dispute, neither party could proceed with the claim until that rating was obtained because the commission "specifically deferred" the resolution of that issue. Wainwright v. Newport News Shipbuilding & Dry Dock Co., 50 Va. App. 421, 433, 650 S.E.2d 566, 572 (2007) (considering an evidentiary hearing that resolved the management of the claimant's medical treatment to be a distinct prayer for relief that did not implicate the claimant's earlier request for "all benefits to which he . . . may be entitled").

permanency claim to remain ongoing until a final impairment rating was obtained and the joint stipulation did not operate as an abandonment or waiver of that claim.

Because the joint stipulation did not operate as an abandonment or waiver of claimant's permanency claim, we must determine whether such claim was timely filed.[2] "A claimant is not required . . . to produce the evidence [of a final impairment rating] prior to the expiration of the [statute of] limitation [period], so long as the application alleged that a change in condition existed within the time of the filing." Sw. Va. Tire, Inc. v. Bryant, 31 Va. App. 655, 661, 525 S.E.2d 563, 566 (2000). We find "no rule or authority which requires a claimant to act within a certain time after the filing of a claim to avoid having the claim dismissed." J&F Servs. v. Villatoro, No. 1202-96-4, 1996 Va. App. LEXIS 672, at *8 (Oct. 29, 1996); see Johnson v. Smith, 16 Va. App. 167, 170, 428 S.E.2d 508, 510 (1993) ("Although Johnson did not seek a diagnosis . . . until July 30, 1991, after the expiration of the thirty-six month period on July 6, 1989, this fact does not preclude a finding that a disability existed during the thirty-six month period.").

Because claimant's permanency claim was ongoing and not interrupted by the joint stipulation, the record establishes that for statute of limitations purposes, her permanency claim

---

[2] The parties and commission incorrectly cite Code § 65.2-708(A) as the governing authority establishing the statute of limitations period. "A review pursuant to Code § 65.2-708(A) is predicated upon a *prior* award." Lynchburg Foundry Co. v. McDaniel, 22 Va. App. 307, 311, 469 S.E.2d 85, 87 (1996) (emphasis added). Claimant filed her permanency claim simultaneously with her wage loss and lifetime medical benefits claims, thereby giving the commission and employer notice of her intent to seek permanent disability benefits at the inception of the incident. Cf. Metro Mach. Corp. v. Lamb, 33 Va. App. 187, 192-93, 532 S.E.2d 337, 339 (2000) ("So long as the claimant's notice advises the commission of necessary elements of his claim, 'it activates the right of the employee to compensation and . . . invokes the jurisdiction of the [commission].'" (quoting Trammel Crow Co. v. Redmond, 12 Va. App. 610, 614, 405 S.E.2d 632, 634 (1991))). Thus, even though she received awards from the wage loss and medical benefits claims first, there was no change in claimant's condition in regards to permanent disability because the permanency claim remained open and ongoing. We therefore apply the statute of limitations period from the date of the accident under Code § 65.2-601.

was filed on February 8, 2006. Claimant sustained her compensable injury on January 18, 2006. Thus, even though she did not obtain a final impairment rating until March 23, 2009, claimant filed her permanency claim within all applicable statute of limitations periods. See Code § 65.2-601 (requiring a claimant to file a claim within two years of the accident).

III.

CONCLUSION

The joint stipulation did not operate as an abandonment or waiver of claimant's permanency claim because it did not contain a clear showing that the claim had been withdrawn. In light of the commission's order staying the claim until claimant obtained a final impairment rating, the permanency claim remained ongoing and uninterrupted since claimant first filed the claim on February 8, 2006. It is of no consequence that she did not obtain her permanency rating until March 25, 2009. Because claimant timely filed the claim within two years of the accident, we reverse the commission's denial of permanent partial disability benefits and remand the case for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>

Bumgardner, J., dissenting.

I respectfully dissent.

The joint stipulation, its acceptance by the commission, and the order removing the matter from the hearing docket must be interpreted in light of the procedural posture of the claim at the time the stipulation was offered and the order was entered.

The claimant filed her claim for benefits on February 8, 2006. It included her claim for permanent disability benefits. The commission stated in its initial letter, dated February 14, 2006: "The claim for permanent partial disability will remain on hold pending the receipt of a final impairment rating." On March 24, 2006, the commission sent a notice of hearing that set a hearing for May 5, 2006. The subject of the hearing was stated: "CLAIMANTS CLAIM FOR BENEFITS FILED 02/08/2006."

The claimant advised the commission by letter May 4, 2006: "The parties have resolved all issues presently in dispute." An order entered May 9, 2006 recited, "the parties have resolved the matter in controversy" and cancelled the hearing contingent on receiving a stipulated agreement. On July 11, 2006, the commission sent another notice of hearing that reset the hearing for August 15, 2006. The subject was again stated as "CLAIMANTS CLAIM FOR BENEFITS FILED 02/08/2006." The parties submitted a joint stipulation in response to that notice, and the commission removed "this matter" from the hearing docket.

While the first letter from the commission stated, "[t]he claim for permanent partial disability will remain on hold . . . ," each subsequent notice set the entire claim for hearing. The record clearly shows that the entire claim for benefits, which included the claim for permanent disability benefits, was before the commission when the claimant advised that the parties had resolved "all issues presently in dispute." The stipulation and order removing "this matter" from the docket should be read in light of the procedural posture of the claim and with reference to the

issues brought forward for hearing: all those benefits claimed in the claim for benefits filed February 8, 2006.

As it stated, "the Commission does not adjudicate cases piecemeal." Issues raised and not pursued or determined by hearing or formal agreement are abandoned unless specifically deferred. Wainwright v. Newport News Shipbuilding & Dry Dock Co., 50 Va. App. 421, 433, 650 S.E.2d 566, 572 (2007). I would affirm the commission's decision that "by executing the Joint Stipulation, [claimant's] . . . claim for permanent partial disability benefits was waived or abandoned at that time, and she was required to file a change-in-condition claim within 36 months of the date benefits were last paid [April 4, 2006] under an award."